FILED
98 FEB 26 PM 12: 27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **KENNETH W. INGRAM, et al.,** ] | |
| ] | |
| Plaintiff(s), ] | |
| ] | |
| vs. ] | CV 97-N-3099-E |
| ] | |
| **ROBERT E. DABBS, et al.,** ] | |
| ] | |
| Defendant(s). ] | |

**ENTERED**
**FEB 26 1998**

### Memorandum of Opinion

Plaintiffs Kenneth W. Ingram ("Ingram") and Judy R. Ingram filed this action in the Circuit Court of Calhoun County, Alabama, on August 26, 1997. Named defendants were defendants Robert E. Dabbs ("Dabbs") and Jerre D. Haynes ("Haynes"). Mr. and Mrs. Ingram allege that the defendants were the drivers of two motor vehicles, which collided on the Anniston Army Depot, allegedly causing physical injuries to Mr. Ingram, a passenger in the vehicle driven by Haynes. Plaintiffs seek unspecified compensatory and punitive damages for the alleged negligence and wanton recklessness by the operators of the two vehicles.

On November 26, 1997, defendants removed the action to this court, pursuant to 28 U.S.C. §§ 1442(a)(1) and 2679(d)(2), claiming that, at the time of the collision, Dabbs and Haynes were acting within the line and scope of their employment as civilian employees of the Department of the Army, United States of America. Together with the notice of removal the United States, through United States Attorney G. Douglas Jones, (1) certified pursuant to 28 U.S.C. § 2679(d)(2) that Dabbs and Haynes, at the time of the incident in

question, were acting within the scope of their employment as employees of the United States; (2) gave notice of the substitution of the United States as the proper party defendant; and (3) moved to dismiss for want of subject matter jurisdiction. On December 22, 1997, the plaintiffs moved to remand to the state court, claiming that Dabbs and Haynes were, at the time of the incident, acting outside the scope of their employment.

The motions were submitted at the court's regularly scheduled motion docket on February 25, 1998, and are ripe for decision. Upon due consideration, the United States will be substituted as the proper party defendant; the motion to dismiss will be granted; and plaintiff's motion to remand will be denied as moot.

I.  **Statement of the Case.**[1]

On October 9, 1995, the date of the alleged accident, Ingram, Dabbs and Haynes were all similarly employed by the United States government as civilian firefighter/paramedics at the Anniston Army Depot ("Depot"). On that day, Haynes drove a two-and-one-half ton Depot Risk Management "hazardous materials response truck" with Ingram as a passenger. *Ingram Affidavit* at 1. Haynes and Ingram were returning to their duty station, having finished playing tennis elsewhere at the Depot. At approximately 3:50

---

[1] In support of their motion to dismiss, defendants submitted evidence in the form of a declaration, under penalty of perjury, pursuant to 28 U.S.C. § 1746, by Joseph H. Rouse, Chief and Deputy Chief of Tort Claims Division, U.S. Army Claims Service. In response to the motion to dismiss and according to the court's order of December 2, 1997, plaintiffs submitted evidence in the form of Ingram's affidavit, Ingram's medical records, and a Department of the Army accident report. In reply to plaintiffs' opposition to their motion to dismiss, defendants submitted evidence in the form of a declaration by James D. Messer, Fire Chief in the Fire and Emergency Service Division, Directorate of Risk Management, at the Anniston Army Depot, under penalty of perjury, pursuant to 28 U.S.C. § 1746. The facts set out below are gleaned from the parties' submission of evidence, their respective responses to those submissions, and the court's own examination of the evidentiary record.

2

p.m., Dabbs drove a Depot Risk Management pick-up truck on Roosevelt Drive at the Depot, approaching the truck driven by Haynes from the opposite direction.

According to Ingram, the two drivers began playing "chicken" with each other, crossing the center line of the roadway as if threatening a head-on collision. *Id.* at 1-2. As they passed each other, the vehicle driven by Dabbs struck the driver's side door of the vehicle driven by Haynes. The vehicle driven by Haynes rolled on its side and slid into a telephone pole. Ingram suffered physical injuries, including a broken leg.

Dabbs and Haynes claim that they were not playing "chicken," but rather a tire blew out on the vehicle driven by Dabbs, causing the accident. On the other hand, independent investigations by the Department of the Army, Alabama State Troopers and Cooper Tire Company concluded that the tire did not blow out. The Department of Army report states that both drivers "appear to have acted with willful misconduct because it would have been intentionally wrongful or unlawful to change lanes into oncoming traffic for no plausible reason." *Department of Army, Report of Survey* at 2.

According to a declaration by James D. Messer, Fire Chief in the Fire and Emergency Service Division, Directorate of Risk Management at the Depot, Dabbs and Haynes were acting within the scope of their employment at the time of the incident that injured Ingram. Messer states that Ingram and Haynes were authorized to leave the "East" fire station in order to "engage in physical training, which is a requirement of their job," and that Dabbs was returning to the "West" fire station from the "East" fire station, where he had "reported to 'cover' while the others were engaged in physical training." *Declaration of*

*Messer*. Messer also states that the road where the collision occurred is the most direct route back to the individuals' respective duty stations. *Id.*

According to a declaration by Joseph H. Rouse, Chief and Deputy Chief of Tort Claims Division, U.S. Army Claims Service, Ingram did not pursue administrative remedies required by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, for claims against the United States for the acts of its employees. However, according to defendants' motion to dismiss, Ingram did apply for and receive benefits under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq.*, for "continuation of pay, prescriptions, a medical lift chair, attendant's fees, loss wage earning capacity and a scheduled award for his knee." *Motion to Dismiss* at ¶ 4.

## II. Standard for Decision.

Defendants, in their motion to dismiss, assert that this court lacks subject matter jurisdiction over this action. On a motion under Fed. R. Civ. P. 12(b)(1) such as this, the movant may support the motion with affidavits or other evidence; likewise, the pleader, against whom the motion is directed, may controvert the movant's evidence with extra-pleading material. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993), *cert. denied*, 510 U.S. 1040 (1994). Furthermore, when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

The court, not a jury, must weigh the merits of what is presented on a Rule 12(b)(1) motion. *Gilbert v. David*, 235 U.S. 561 (1915); *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.

1981), *cert. denied*, 454 U.S. 897 (1981); *but see Gilbert*, 235 U.S. at 568 (the court has the discretion to empanel a jury); *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 39 (9th Cir. 1978) (same); *Stone v. Southern Pac. Co.*, 32 F. Supp. 819 (S.D.N.Y. 1940) (use of special master). However, if a decision on the jurisdictional issue requires a ruling on the merits of the case, the decision should await a determination of the merits either by the court on a summary judgment motion or by the fact finder at trial. *Seirra Club v. Shell Oil Co.*, 817 F.2d 1169 (5th Cir. 1987) (summary judgment), *cert. denied*, 484 U.S. 985 (1987), *reh'g denied*, 484 U.S. 1083 (1988); *Mimbs v. Commercial Life Ins. Co.*, 832 F. Supp. 354 (S.D. Ga. 1993) (summary judgment); *Chatham Condominium Ass'n v. Century Village, Inc.*, 597 F.2d 1002 (5th Cir. 1979) (trial); *Allen v. U.S.*, 527 F. Supp. 476 (D.C. Utah 1981) (trial).

### III.    Discussion.

Defendants removed this action pursuant to the FTCA, which provides for jurisdiction in the federal district courts as follows:

> Upon certification by the Attorney General that the defendant employee was acting *within the scope of his office or employment* at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2) (emphasis added). Therefore, because the United States properly certified to the court that defendants Dabbs and Haynes were "acting within the scope of [their] office or employment," this case was properly removed. *Id.*

Upon removal, defendants moved this court to substitute the United States as the proper party defendant, pursuant to the FTCA, claiming that the Dabbs and Haynes were in fact acting within the line and scope of their employment as civilian firefighter/paramedics at the Depot when Ingram sustained his injuries. Contemporaneously, defendants moved the court to dismiss this action for two reasons: (1) plaintiffs did not file an administrative claim required by the FTCA; and (2) Ingram was compensated under the FECA, and therefore, he can not further recover against the United States for the same injury under the FTCA or otherwise. This opinion will consider each of defendants' arguments for dismissal of this action in reverse order.

### A.    Recovery under the FECA.

First, defendants allege, and plaintiffs do not dispute, that Ingram applied for and received employee benefits under the FECA. The purpose of the FECA is to provide federal employees with a swift, economical and assured right to compensation for injuries arising from their employment relationship, regardless of the negligence of the employee or their fellow employees. *Weyerhaesuser S.S. Co. v. United States*, 372 U.S. 597, 928-29 (1963), *overruled on other grounds*, *United States v. Reliable Transfer Co.*, 421 U.S. 397, (1975). By enacting the FECA, Congress left no doubt as to its desire to limit federal employees to their remedy under the Act and to preclude double recovery or election of

6

remedies. *Lewis v. United States*, 190 F.2d 22, 22 (D.C. Cir. 1951), *cert. denied*, 342 U.S. 869 (1951).

The FECA provides "compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102. Recovery under FECA for a covered injury is exclusive, and an employee cannot further recover against the United States for the same injury under the FTCA or otherwise. 5 U.S.C. S 8116(c). The FECA covers liability created both by negligent and intentional acts on the part of the United States. *Green v. Hill*, 954 F.2d 694, 697 (11th Cir. 1992) (citing *Heilman v. United States*, 731 F.2d 1104, 111 n.6 (3rd Cir.1984), *on petition for reh'g*, 968 F.2d 1098 (11th Cir. 1992); *Metz v. United States*, 723 F. Supp. 1133, 1137 (D. Md. 1989); *Burke v. United States*, 644 F. Supp. 566, 569 (E.D. La.1986)).

The FECA, however, does not preclude a federal employee from bringing a cause of action against a private third party for injuries caused by such party when the federal employee was on the job. 5 U.S.C. § 8131; *see Parr v. United States*, 172 F.2d 462 (10th Cir. 1949); *Wallace v. United States*, 669 F.2d 947 (4th Cir. 1982). Furthermore, the FECA does not preclude a federal employee, injured through the negligence of a fellow employee, from suing that fellow employee. *Marion v. United States*, 214 F. Supp. 320 (D. Md. 1963); *see also Randall v. United States*, 282 F.2d 287 (D.C. Cir. 1960), *cert. denied*, 365 U.S. 813 (1961).

In *Green v. Hill*, an employee of the United States ("Green") brought state law claims for assault and battery against his supervisor, but Green had not sought relief under the FECA. 954 F.2d at 696. The federal district court dismissed the action, based upon the

7

pleadings, for lack of subject matter jurisdiction. *Id.* On appeal, the Eleventh Circuit held that, if the defendant assaulted Green while performing his duties as Green's supervisor, then the FECA would provide Green an exclusive recovery for his injuries.[2] *Id.* at 697; *see Green*, 968 F.2d at 1098-99 (on petition for rehearing, amending remand portion of the opinion). The Eleventh Circuit, in *Green*, remanded the action for a factual determination on the issue of whether Green's supervisor acted "within the scope of his employment." *Green*, 968 F.2d at 1098-99. According to the Eleventh Circuit, if Green's supervisor acted "within the scope of his employment," then Green's state law claims against his supervisor were due to be dismissed for lack of subject matter jurisdiction. *Id.*

In this case, defendants allege, and plaintiffs do not dispute, that Ingram has already received benefits under the FECA. Under the rule in *Green*, Ingram is eligible for recovery under the FECA only if his injuries were "work related." *Id.* at 697. Furthermore, the United States is the proper defendant in this action, the FECA is Ingram's exclusive remedy. *Id.* However, if the United States is not the proper defendant in this action, under the rule in *Green*, Ingram and his wife may maintain their separate state law claims against Ingram's co-workers, Dabbs and Haynes, even though he has already recovered under the

---

[2] The Eleventh Circuit, in *Green*, noted that courts are split on the issue of whether the FECA provides recovery for emotional damages. *Compare Burke v. United States*, 644 F. Supp. 566 (E.D. La.1986) (FECA provides recovery); *In the Matter of Lillian Cutler*, 28 E.C.A.B. 125, 129-30 (1976) (Dept. of Labor's Employees' Compensation Appeals Board states that personal injury includes emotional stress) *with Newman v. Legal Services Corp.*, 628 F. Supp. 535, 543 (D.D.C. 1986) (FECA does not cover claims for emotional injury). The *Green* court did not decide this issue as to Green's claims for emotional injury because, according to the court, "[they] are nevertheless precluded because they arise from the claims of physical assault and battery, and the FECA provides exclusive recovery for the same incident." *Green*, 954 F.2d at 697 n.9 (citing 5 U.S.C. § 8116(c)).

For the same reason, this court need not decide whether the FECA or the FTCA would provide recovery for plaintiffs' claims for emotional injury in this lawsuit.

FECA. Therefore, like the district court in *Green*, this court must determine whether the United States is the proper defendant in this action.

**B.    Recovery under the FTCA.**

The FTCA controls any action in which the United States is a defendant. The FTCA effectively waives the federal government's all-encompassing sovereign immunity to tort actions and establishes novel and unprecedented liability to victims torts committed by the government. 28 U.S.C. § 2674; *Rayonier, Inc. v. United States*, 352 U.S. 315, 319 (1957). However, the government's liability is limited under the FTCA to the extent that it is the exclusive remedy for these victims. 28 U.S.C. § 2679; *FDIC v. Citizens Bank and Trust Co. of Park Ridge, Ill.*, 592 F.2d 364 (7th Cir. 1979), *cert. denied*, 444 U.S. 829 (1979). As such, it serves the dual purposes both of compensating victims and eliminating the need for private litigation. *United States v. Le Patourel*, 571 F.2d 405, 407-08 (8th Cir. 1978). Specifically, the FTCA is the exclusive remedy for alleged negligent operation of a motor vehicle by an employee of the Untied States. *See Lipinski v. Bartko*, 237 F. Supp. 688 (W.D. Pa. 1965). This exclusivity provision protects individual government drivers from the financial burden of any personal liability associated with operating motor vehicles for the government. *See Thompson v. Sanchez*, 539 F.2d 955 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1072 (1977); *accord Nalder v. Mann*, 951 F.2d 301, 304-05 (11th Cir. 1992).

Defendants claim that plaintiffs' claims are due to be dismissed because they failed to file administrative tort claims for their injuries, as required by 28 U.S.C. § 2675(a).[3] In

---

[3] Prior to institution of a private action, § 2675(a) of the FTCA requires disposition of certain claims against the United States by the appropriate federal agency as follows:

response to defendants' motion to dismiss, plaintiffs do not dispute that they have failed to satisfy the administrative prerequisites for a lawsuit against the United States under the FTCA. However, plaintiffs contend that the United States is not the proper defendant because, despite the certification of the United States Attorney, Dabbs and Haynes were not "acting within the scope of [their] office or employment," as required by 28 U.S.C. § 2679(b)(1).[4] Plaintiffs contend that Dabbs and Haynes, as individuals, are the proper defendants in this action, and that this action is due to be remanded to the state court from whence it came.

Although defendants filed the United States Attorney's certification of scope of employment, as required for removal by 28 U.S.C. § 2679(d)(2), this certification is not dispositive of the issue. *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1540-42 (11th Cir.

---

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2675(a).

[4] Section 2679(b)(1) provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1).

1990) (Attorney General's certification was pertinent and dispositive only for removal purposes), *opinion amended*, 924 F.2d 1555 (11th Cir. 1991), *cert. denied*, 502 U.S. 813 (1991). This certification to the federal district court does, however, shift the burden of proof to the plaintiff to establish that the challenged conduct exceeded the scope of employment. *Id.* at 1542-43. But, the federal district court must make its determination *de novo*, without deference to the United States Attorney's certification. *Id.* at 1543.

The determination of whether or not a federal employee is acting within the line and scope of his employment is made by applying the law of the state where the incident occurred. *Williams v. United States*, 350 U.S. 857 (1955); *S.J. & W. Ranch*, 913 F.2d at 1542. The general rule in Alabama is that "where an employee abandons his employer's business for personal reasons, the employment is suspended and the employer is not liable for the actions of the employee during the temporary lapse in employment . . . ." *Hendley v. Springhill Mem. Hosp.*, 575 So. 2d 547, 550 (Ala. 1990) (citing *Land v. Shaffer Trucking, Inc.*, 275 So. 2d 671 (1973)); *see also Craft v. United States*, 542 F.2d 1250, 1254 (5th Cir. 1977), *reh'd denied*, 546 F.2d 906 (11th Cir. 1977). Furthermore, "[a] tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the principal if it emanated from wholly personal motives of the agent and was committed to gratify wholly personal objectives or desires of the agent." *Id.* (citing *Plaisance v. Yelder*, 408 So. 2d 136 (Ala. Civ. App. 1981).

On the other hand, "if the act resulting in the injury complained of was within the scope of the servant's employment, the master will be liable therefor, although the act was in violation of the master's instructions as to the method of performing the work, or contrary

11

to instructions, or expressly forbidden by him." *AVCO Corp. v. Richardson*, 234 So. 2d 556, 559 (Ala. 1970) (citing *St. Louis-San Francisco Ry. Co. v. Robbins*, 123 So. 12 (1929)). Furthermore, the motive behind the act does not defeat liability for the employer, for employer liability extends "even where the wrong complained of was intentionally, willfully, or maliciously done in such a manner as to authorize a recovery for punitive damages." *Plaisance*, 408 So. 2d at 137 (citing *Anderson v. Tadlock*, 175 So. 412 (Ala. App. 1937).

Under Alabama Workers Compensation law, the phrase, "in the course of his employment," refers to the time, place and circumstances under which the accident took place. *Accord Moesch v. Baldwin County Elect. Membership Corp.*, 479 So. 2d 1271, 1272 (Ala. Civ. App. 1985) (construing Alabama workers Compensation law); *Kewish v. Alabama Home Builders Self Insures Fund*, 664 So. 2d 917, 921 (Ala. Civ. App. 1995) (same). "An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it." *Moesch*, 479 So. 2d at 1272 (citing *Massey v. United States Steel Corp.*, 86 So. 2d 375 (Ala. 1955)).

In this case, both Dabbs and Haynes were on duty as firefighter/paramedics at the Depot. Both individuals had been engaged in activities authorized by their employer; Dabbs had been playing tennis at the Depot as part of the physical training required by his employer, and Haynes had been covering for Dabbs at his duty station in his absence. Both individuals were in route to their respective duty stations to resume their regular duties, and they traveled along the most direct route between their assignments. They drove vehicles

12

issued to them by their employer, and they drove those vehicles on their employer's property. Even if they did drive irresponsibly, they nonetheless did it while in performance of their assigned duties. Therefore the plaintiffs have failed to establish that, under the law of Alabama, Dabbs and Haynes, as government employees, acted outside the line and scope of their employment.

The court is unwilling to accept plaintiffs' argument that the alleged negligent or wanton acts by Dabbs and Haynes took them outside the protection of the FTCA, that they operated their vehicles within the scope of their employment up until the point in time when those acts occurred, and that only when they allegedly began to swerve across the center line of the roadway did they act outside the line and scope of their employment. If that is all that is required for a government employee to become subject to individual liability, then the FTCA will often offer no protection at all to individual employees of the government. If that is all that is required, then the moment that any government employee commits any negligent or wanton act on the job, that employee will be exposed to the burden and expense attendant to claims based on personal liability.

Accordingly, the court finds, based upon the evidence before it, that Dabbs and Haynes were acting within the line and scope of their employment at the time of the events made the basis of this action and that the United States is the proper party defendant to this action. Because the plaintiffs have not exhausted their administrative remedies under the FTCA, this action is due to be dismissed.

## IV. Conclusion.

In summary, this action was properly removed from the Circuit Court of Calhoun County, Alabama, pursuant to the FTCA, 28 U.S.C. § 2679(d)(2). Furthermore, the individual defendants were acting with the line and scope of their employment and the United States is the proper party defendant to this action. By separate order, the United States of America shall be substituted as the sole defendant. The action will be dismissed for want of subject matter jurisdiction because the plaintiffs have not filed any claim for administrative relief and the motion to remand will be denied as moot.

Done, this 26th of February, 1998.

```
                                    _____
                                    EDWIN L. NELSON
                                    UNITED STATES DISTRICT JUDGE
```